## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## NEW HAVEN DIVISION

| | |
|---|---|
| In re:<br><br>SERVICOM, LLC, JNET COMMUNICATIONS, LLC, VITEL COMMUNICATIONS, LLC,<br><br>*Debtors* | Chapter 7<br>Case No. 18-31722 (AMN)<br>Case No. 18-31723 (AMN)<br>Case No. 18-31724 (AMN)<br>(Jointly Administered Under<br>Case No. 18-31722 (AMN))[1]<br><br>ECF Nos.[2] 562, 570, 1415, 1420, 1425, 1467; Proof of Claim 79-3 |
| VFI KR SPE I, LLC,<br>*Plaintiff*<br>v.<br><br>EUGENE CALDWELL, DAVID JEFFERSON, and CORAL CAPITAL SOLUTIONS LLC,<br>*Defendants* | Adversary Proceeding No. 19-3005 (AMN)<br><br><br><br><br><br>AP-ECF Nos. 515, 524, 529, 541 |
| BARBARA H. KATZ, CHAPTER 7 TRUSTEE,<br>*Plaintiff*<br>v.<br><br>EUGENE CALDWELL, DAVID JEFFERSON, and CORAL CAPITAL SOLUTIONS LLC,<br>*Defendants* | Adversary Proceeding No. 19-3006 (AMN)<br><br><br><br><br><br><br>AP-ECF Nos. 491, 499, 505, 510 |

## MEMORANDUM OF DECISION AND ORDER DISALLOWING
## CORAL CAPITAL SOLUTIONS LLC'S EARLY TERMINATION FEE

---

[1] These estates are jointly administered but not substantively consolidated.

[2] A citation to a document filed on the docket of the underlying Chapter 7 case, case number 18-31722, are noted by "ECF No." referencing the document number on the docket of the Chapter 7 case. A citation to a document filed on the docket of an adversary proceeding case is noted by the case number followed by "AP-ECF No." referencing the document number on the docket of the adversary proceeding case.

This Memorandum of Decision determines whether Coral Capital Solutions LLC ("Coral") is entitled to an early termination fee based on the terms of a pre-petition factoring agreement with the Chapter 7 Debtors here, ServiCom, LLC, JNET Communications, LLC, and Vitel Communications, LLC. A copy of the pre-petition factoring agreement including all amendments is attached to Coral's Proof of Claim 79-3, Part 2, pp. 3-81 (the "Factoring Agreement"). Paragraph 9.1 of the Factoring Agreement defines an "Early Termination Fee" which may be due to Coral under specified conditions. Proof of Claim 79-3, Part 2, pp. 17-18. Coral claims entitlement to an Early Termination Fee totaling $1,141,875. *See* ECF No. 1940-1, p.3.

Chapter 7 Trustee, Barbara H. Katz (the "Trustee"), creditor VFI KR SPE I, LLC ("VFI"), and interested parties Rev. Dr. David Jefferson & Mr. Eugene Caldwell ("J&C") argue Coral is not entitled to the Early Termination Fee, although they do not dispute Coral's calculation of the sum it claims it is owed. The material facts related to Coral's entitlement to an Early Termination Fee provided as part of the record at this summary judgment stage of the Main Case and adversary proceeding cases 19-3005 and 19-3006 appear undisputed.

The Court deferred the Early Termination Fee issue to first address other aspects of Coral's claims, but the parties requested an earlier determination based on the summary judgment record. ECF Nos. 2019, pp. 47-48; 2029, p. 14; Fed.R.Civ.P. 54(b). The Court agreed there was no just reason for further delay on this issue, prepared this Decision and announced the ultimate holding to the parties. However, due to unresolved questions relating to the scope of the sealed summary judgment record, the court delayed entry of this Decision until a ruling could be made on the applicability of 11 U.S.C. § 107(b)

to this case.  However, with the recent resolution of the § 107 issues and the scope of the

sealed record in this case now clarified there need not be any further delay.  See ECF

No. 2142, the "107 Order").  To the extent they are applicable to this Decision, the court

adopts and incorporates by reference the findings of fact and conclusions of law set forth

in the 107 Order as though set forth herein.

Familiarity with the record of the Chapter 7 case (Case No. 18-31722) including

ECF No. 1913, and with adversary proceedings Case Nos. 19-3005 and 19-3006, is

assumed.

<u>Jurisdiction and Venue</u>

The United States District Court for the District of Connecticut has jurisdiction over

this adversary proceeding by virtue of 28 U.S.C. § 1334.  This Court derives its authority

to hear and determine this matter on reference from the District Court pursuant to 28

U.S.C. §§ 157(a), (b)(1), and the District Court's General Order of Reference dated

September 21, 1984.  This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A)

(matters concerning the administration of the estate), (B) (allowance or disallowance of

claims against the estate), (C) (counterclaims by the estate against persons filing claims

against the estate), (K) (determinations of the validity, extent, or priority of liens), and (O)

(other proceedings affecting the liquidation of the assets of the estate or the adjustment

of the debtor-creditor or the equity security holder relationship).  The Court further

concludes the venue of this proceeding in this District is proper pursuant to 28 U.S.C. §§

1408 and 1409, and that sufficient notice and opportunity for a hearing on the subject

Motions was afforded under the circumstances and no other notice need be provided.

Pursuant to Fed.R.Bankr.P. 7012(b), VFI, the Trustee, Coral, Jefferson and

Caldwell each filed statements consenting to the entry of a final order and judgment by

the bankruptcy court, subject to traditional rights of appeal.  Case No. 19-3005, AP-ECF Nos. 54, 55, 57; 19-3006, AP-ECF Nos. 47, 48, 49.

This memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

<u>Nature of the Proceedings</u>

The Trustee, VFI, J&C and Coral each seek summary judgment as to Coral's entitlement to the Early Termination Fee.  The Trustee, VFI and J&C seek summary judgment on Count 7 of the Trustee's Amended Complaint (Case No. 19-03006, AP-ECF No. 230), Coral's Motion to Disburse Sale Proceeds (ECF No. 507), Coral's Notice of Filing of Administrative Proof of Claim (ECF No. 562), and cross claims in Case Nos. 19-03005 and 19-03006.  Coral seeks judgment as to the allowance of Proof of Claim 79-3, allowance of its Notice of Filing of Administrative Proof of Claim (ECF No. 562) as amended, and its Motion to Disburse Sale Proceeds (ECF No. 507).

The Court previously acknowledged waiver language regarding enforcement of Coral's pre-petition Factoring Agreement included in several cash collateral orders entered during the Chapter 11 phase of the bankruptcy case, but deferred ruling on Coral's entitlement to the Early Termination Fee.  ECF No. 1913, p. 3.  The Court now considers whether Coral is entitled to the Early Termination Fee under the facts and circumstances presented at the summary judgment stage of these cases.  While Coral argues no one can challenge its entitlement to the Early Termination Fee because such challenges were waived during the Chapter 11 phase of the case, the Court has an independent obligation to determine Coral's entitlement to a remedy under the Factoring

Agreement as a matter of law.  *See* ECF No. 279 at 19 (parties' waiver provisions in earlier court order).

The Debtors (a/k/a "Sellers" in the Factoring Agreement) commenced their voluntary Chapter 11 cases on October 19, 2018 ("Petition Date").  ECF No. 1.  The same day they sought an order authorizing use of cash collateral and sale of the Debtors' accounts receivable to Coral.  ECF No. 9 ("Cash Collateral Motion").  The Cash Collateral Motion sought an order authorizing the Debtors to enter into a form of agreement based on the pre-petition Factoring Agreement, dated October 17, 2011, without inclusion of the various amendments the parties had agreed to between 2011 and the Petition Date.  The Cash Collateral Motion did not purport to assume the pre-petition Factoring Agreement pursuant to 11 U.S.C. § 365 nor to terminate it.  During the initial hearings on the Cash Collateral Motion the parties were clear they used the form of the pre-petition Factoring Agreement to quickly set forth their post-petition, temporary agreement.  The full pre-petition Factoring Agreement, including amendments, was not part of the record before the Court until after the case converted to a Chapter 7 case.

The Court approved the initial Cash Collateral Motion on an interim basis on October 25, 2018, and ultimately entered a sixth interim order approving the Cash Collateral Motion on December 28, 2018 (together with five prior orders, the "Cash Collateral Order").  ECF Nos. 52, 104, 154, 214, 279, 319.

After an early December 2018 shutdown of operations and a mid-December 2018 auction of the Debtor's assets, the Court converted the Chapter 11 case to a Chapter 7 case on January 16, 2019.  ECF No. 394.  Neither the Debtors as Chapter 11 debtors-in-

possession nor the Chapter 7 Trustee assumed the pre-petition Factoring Agreement. *See* 11 U.S.C. § 365(b)(1).

Burdens of Proof and Applicable Law

Coral bears the initial burden of proof to establish a contract termination occurred, rather than a mere breach of contract.  To be entitled to the Early Termination Fee and its calculation of liquidated damages, Coral must establish the conditions precedent stated in the Factoring Agreement were satisfied.  If a termination of the Factoring Agreement is established, the burden is on the party seeking to avoid liquidated damages to show the stated liquidated damages are, in fact, a penalty.  *JMD Holding Corp. v. Cong. Fin. Corp.*, 828 N.E.2d 604, 609 (N.Y. 2005).  Here, once a termination is established, those challenging the enforcement of the Early Termination Fee bear the burden to show either (1) the resulting damages were readily ascertainable at the time the Factoring Agreement was entered into, or (2) the liquidated damage amount provided for in the Factoring Agreement was conspicuously disproportionate to the foreseeable losses.

New York state law governs the Factoring Agreement.  Proof of Claim 79-3, Part 2, p. 20, ¶ 10.6; p. 69, ¶ 7).  Early termination fees are common in commercial relationships and are generally enforceable under New York law as contractual liquidated damages provisions.  Such provisions "have value in those situations where it would be difficult, if not actually impossible, to calculate the amount of actual damages." *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y. 2d 420, 424 (App. Ct. 1977).  "Liquidated damages constitute the compensation which, the parties have agreed, should be paid in order to satisfy any loss or injury flowing from a breach of their contract." *Truck Rent-A-Center, Inc.* 41 NY 2d at 423-24.

Whether an early termination fee represents an enforceable liquidation of damages or an unenforceable penalty is a question of law, giving due consideration to the nature of the contract and the circumstances. *JMD Holding Corp. v. Cong. Fin. Corp.*, 828 N.E.2d at 609. "A punitive provision which sets damages grossly disproportionate to probable actual loss will be disallowed as against public policy because such a clause does not provide fair compensation but rather operates to secure performance by the compulsion of the very disproportion." *GFI Brokers, LLC v. Santana*, 2009 WL 2482130, *1 (S.D.N.Y. Aug. 13, 2009); *accord. Leasing Serv. Corp. v. Just.*, 673 F.2d 70, 73 (2d Cir. 1982); *Addressing Sys. & Prod., Inc. v. Friedman*, 874 N.Y.S.2d 430, 431 (2009); *see also Walter E. Heller & Co. v. Am. Flyers Airline Corp.*, 459 F.2d 896, 899 (2d Cir. 1972) ("It is also clear under New York law a contractually agreed upon sum for liquidated damages will be sustained where (1) actual damages may be difficult to determine and (2) the sum stipulated is not 'plainly disproportionate' to the possible loss."). Courts must apply this analysis from the parties' perspective as of the date of the contract rather than from the date of the breach and must resolve all doubts in favor of a construction that invalidates the provision as a penalty. *Truck Rent–A–Center, Inc.,* 41 N.Y.2d at 425; *Pyramid Centres & Co. Ltd. v. Kinney Shoe Corp.*, 663 N.Y.S.2d 711, 713 (App.Div.1997).

When a contract specifies a procedure for termination, a party seeking to terminate the agreement must take the affirmative actions provided for in the agreement, after a designated event occurs, to terminate it. *In re St. Casimir Dev. Corp.*, 358 B.R. 24, 39 (S.D.N.Y. 2007) ("[W]here a party has the option either to terminate the contract upon the occurrence of an event or not to terminate - and where the contract does not expire by its own limitation upon such occurrence - then the contract contains a condition subsequent.

Under a condition subsequent, termination of the contract is not "self-executing" when some triggering even occurs; rather, the person who wishes to terminate the contract must perform some additional act in order to terminate the contract.").

Discussion

The record before the Court does not support a conclusion that Coral or the Debtors completed the termination procedures in the Factoring Agreement. Coral has not provided evidence that either the condition precedent described in ¶ 9.1 or the condition subsequent indicated in ¶ 9.2 was met. Under applicable law, the Factoring Agreement did not automatically terminate upon filing of the bankruptcy petition, and the Court's Cash Collateral Orders did not terminate the Factoring Agreement. Because no "termination" of the Factoring Agreement occurred, Coral is not entitled to the Early Termination Fee.

Because a breach of the Factoring Agreement did occur, Coral might have been entitled to damages other than the liquidated damages provided by the Early Termination Fee described in ¶ 9.1. Based on the updated statement of Coral's claim, it appears no other damages are due to Coral for the pre-Petition Date period relating to the Factoring Agreement. ECF No. 1940-1, p. 3.

<em>Termination Pursuant to The Factoring Agreement</em>

Prior to scrutinizing the enforceability of the Early Termination Fee under these standards the Court considers whether Coral met its burden to establish the Factoring Agreement was, in fact, terminated. Coral and the Debtors entered into the Factoring Agreement on approximately October 17, 2011, and amended it several times. *See* POC 79-3, Part 2 (the Factoring Agreement is found at pp. 3-81). Central to Coral's entitlement

to the Early Termination Fee is whether either Coral or the Debtors terminated the Factoring Agreement within the meaning of ¶¶ 9.1 or 9.2 of the Factoring Agreement.

The Factoring Agreement provided only one way for the Debtors to terminate the agreement, and multiple ways for Coral to terminate it.  The Debtors' ability to terminate the Factoring Agreement was limited to certain windows of time: "only as of the last day of the Initial Term or the last day of any Renewal Term," with sixty days' prior written notice to Coral.  POC 79-3, Part 2, p.17.  Coral, on the other hand, could terminate the Factoring Agreement at any time "with notice to the Sellers."  POC 79-3, Part 2, p.18 (¶9.2).

Paragraph 9.1 defines a "Purchaser Early Termination" as one by Coral with sixty (60) days' prior written notice.  POC 79-3, Part 2, p.17.  Depending upon the nature of a breach of the agreement, Coral could choose to terminate the agreement with less (or no) advance notice.  As relevant here, Paragraph 9.1. provides:

> 9.1. Term ... The Sellers may terminate this Agreement only as of the last day of the Initial Term or the last day of any Renewal Term, as applicable, by giving Purchaser at least sixty (60) days' prior written notice by certified mail, return receipt requested.
>
> Purchaser [Coral] may terminate this Agreement at any time by giving the Sellers sixty (60) days' prior written notice (a "Purchaser Early Termination"); provided however, that if the Sellers shall not have made Receivables available to Purchaser at least equal to the Minimum Monthly Receivables Commitment Amount [$3,500,000] for two consecutive Periods, Purchaser may terminate this Agreement by giving the Sellers ten (10) days' prior written notice;
>
> and provided further that upon the occurrence of an Event of Default (as defined below), Purchaser may terminate this Agreement immediately, without prior notice to any Seller.

> Upon any termination of this Agreement (other than a termination in connection with a Purchaser Early Termination), the Seller jointly and severally agree to pay to Purchaser an early termination fee (the "Early Termination Fee").
>
> Factoring Agreement, ¶ 9.1.

While it is clear the Debtors eventually defaulted under and breached the Factoring Agreement, and it was eventually rejected by operation of the Bankruptcy Code,[3] Coral's claim to the Early Termination Fee in ¶ 9.1 depends on the pre-petition Factoring Agreement having been "terminated" other than by Purchaser Early Termination. A close reading of ¶¶ 9.1 and 9.2 of the Factoring Agreement shows the parties contemplated multiple scenarios for termination, but the bargain to which Coral and the Debtors agreed also limits the availability of the Early Termination Fee to only certain of those scenarios. Although circuitously phrased, under the express terms of ¶ 9.1, the Early Termination Fee only applies when there is a "termination" and further, the termination must not be a Purchaser Early Termination.

The language of ¶ 9.1 could have provided any termination by the Purchaser (Coral) following a breach, or even any breach by the Seller, would trigger the Early Termination Fee, but it does not. As discussed further below, a breach is not the same as a termination, and the parties' choice to limit the applicability of the Early Termination Fee to "any <u>termination</u> of this Agreement" and not "any <u>breach</u> of this Agreement" indicates an intentional choice by the parties when drafting the Factoring Agreement. Indeed, the word "breach" is used in the very next section, ¶ 9.2, numerous times.

---

[3] As discussed further below, 60-days after the conversion to Chapter 7 when the Chapter 7 Trustee did not assume the agreement it was deemed rejected, effective immediately before the date of the filing of the petition, pursuant to Bankruptcy Code sections 365(d)(1) and 365(g)(1).

"Breach" is a word that goes hand-in-hand with any contract, and the parties' choice not to use it in ¶ 9.1 is significant.

Under the express terms of the Factoring Agreement, there are three methods of "terminating" the agreement – a seller-initiated early termination with sixty-days' notice, a "Purchaser Early Termination" with sixty-days' notice, or a purchaser-initiated termination with varying degrees of notice, depending on the circumstances.   Central to all three mechanisms however is the concept of notice.   Coral has not provided evidence of any notice of termination, whether pre- or post- termination.   On this record, the Court cannot conclude there was a termination of the Factoring Agreement at all, let alone one triggering the Early Termination Fee.

In fact, it was not until Coral filed its updated Proof of Claim 79-3 in April 2019, six months post-petition, that the Debtors or the Trustee might possibly have known Coral even sought entitlement to the Early Termination Fee.   POC 79-3.[4]   However, it seems the first time the Early Termination Fee was referenced directly was not until April 1, 2021, when Coral filed an updated statement of its claim as ECF No. 1015.   Although no advance notice may have been necessary, Coral could not terminate the Factoring Agreement retroactively, more than two years after the case was converted.   Coral's arguments supporting a conclusion the Factoring Agreement was terminated in a manner

---

[4] Coral Proofs of Claim 79-1 and 79-2, filed the same day in March 2019, make no reference to the Early Termination Fee, listing approximately $1,600,000 due for "unbilled receivables."   The total pre-petition claim as of March 12, 2019, was alleged to be $2,507,585.51.

Proof of Claim 79-3 filed in April 2019, amends these figures, resulting in a total pre-petition claim as of March 12, 2019, of $ 2,344,460.51.   POC 79-3 identifies "Contractual obligations" in the exact amount of the Early Termination Fee, $1,141,875, with no further explanation.   *Compare* Proofs Of Claim 79-1, p. 4; 79-2, p. 4; 79-3, Part 2, p. 1. This change to Coral's proof of claim, with no explanation, is hardly sufficient as notice of a termination, or even as a general indication Coral was asserting entitlement to the Early Termination Fee, rather than for receivables under the Factoring Agreement as originally indicated.

triggering the Early Termination Fee – rather than merely breached or rejected – are unsupported by the record.

The Factoring Agreement requires compliance with a specific procedure in order for a "termination" to occur, and that procedure was not followed.  According to Coral's Chief Operations Officer, James Bertie, "the Factoring Agreement was terminated as a result of the bankruptcy, in addition to the new Factoring Agreement being approved by the [bankruptcy] court." ECF No. 1418, Exhibit 29 at 4.  In line with Mr. Bertie's statement, Coral's principal argument as to its entitlement to the fee is stated as follows.

> Pursuant to the first Interim Cash Collateral Order entered shortly after Debtors' filed for bankruptcy, the Court authorized the sale of Debtors' accounts receivables to Coral pursuant to a new factoring agreement that was based on the parties' original Factoring Agreement, but excluded all twelve amendments and otherwise altered its terms. As a result, the Factoring Agreement that existed pre-petition was terminated and the parties began operating under the new, Court-approved post-petition factoring agreement. That triggered the Early Termination Fee, and entitled Coral to payment of $1,141,875.
> ECF No. 1421 at 4.[5]

As discussed below, these arguments fail.

### *A Default Triggered by Bankruptcy Is Not A "Termination"*

Bankruptcy Code § 365(e)(1) prohibits ipso facto clauses which attempt to terminate a contract upon the filing of a bankruptcy petition.  As relevant here, the statute provides: "Notwithstanding a provision in an executory contract . . . or in applicable law, an executory contract . . . of the debtor may not be terminated or modified, and any right or obligation under such contract . . . may not be terminated or modified, at any time after

---

[5] Coral's argument in the adversary proceedings is identical.  Case No. 19-03005 AP-ECF No. 525 at 3-4; Case No. 19-03006 AP-ECF No. 506 at 3-4.

the commencement of the case solely because of a provision in such contract or lease conditioned on" the commencement of a bankruptcy case.   11 U.S.C. § 365(e)(1). "Section 365(e)(1) of the Bankruptcy Code renders unenforceable those provisions that purport to terminate or modify a contractual term when a party files for bankruptcy…" *In re Lehman Bros. Holdings Inc.*, 502 B.R. 383, 391-92 (Bankr. S.D.N.Y. 2013).  Thus, the filing of the petition in this case alone did not terminate the Factoring Agreement.

Although Bankruptcy Code §§ 365(c)(2) and (e)(2) exempt certain "financial accommodation" contracts from the scope of § 365's other protections, the Factoring Agreement in this case does not fall within the scope of this exception.  Here, it has been argued repeatedly, and the Court agrees, the factoring relationship between Coral and the Debtors was a "true sale" of the Debtors' accounts to Coral, and not a disguised lending relationship.[6]  As the parties engaged in a "true sale" of receivables under the Factoring Agreement, the Court concludes the Factoring Agreement was not "a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor" within the meaning of § 365(e)(2) or § 365(c)(2).  Therefore, any ipso facto clause purporting to terminate the Factoring Agreement upon filing of the petition is unenforceable.

Applying New York law, the Factoring Agreement also did not automatically terminate upon the occurrence of an event of default.  Rather, the party seeking to terminate the agreement must take the affirmative actions provided for in the agreement, after a designated event occurs, to terminate it.  *In re St. Casimir Dev. Corp.*, 358 B.R. at

---

[6] For the avoidance of doubt, the court's determination relates only to the parties' factoring relationship and does not necessarily extend to the parties' other transactions, such as the "Secured Term Note."

39.  Paragraphs 9.1 and 9.2 make clear the termination of the Factoring Agreement is not "self-executing" when some triggering event occurs; rather, the person who wishes to terminate the contract must perform some additional act in order to terminate it.  Here, the Factoring Agreement provided several distinct methods by which the agreement could be terminated.  There is no evidence any of the specific procedures outlined in ¶ 9.1 for termination of the agreement were utilized.

### *The Cash Collateral Order Did Not Terminate the Factoring Agreement*

Coral argues the Cash Collateral Order authorizing the parties to enter into a post-petition agreement somehow terminated the pre-petition Factoring Agreement, although this relief (declaring a pre-petition contract to be terminated) was not requested, nothing in the Court's orders states or even implies this, and no one referenced it during the hearings leading to the entry of the orders.  Yet, Coral argues, "[t]hrough a series of orders and findings in this case, the Factoring Agreement that existed before the Debtors filed their petition for bankruptcy terminated and the Court expressly approved a new post-petition factoring agreement that was necessarily different and independent from the version that had governed the parties' pre-petition relationship."   ECF No. 1421, p. 17.  Coral breezily concludes, "[t]hus, as of the Petition Date, the pre-petition Factoring Agreement was terminated and a new post-petition agreement was authorized by the Court to fill the resulting void. When that occurred, the Early Termination Fee in the Factoring Agreement was triggered."  ECF No. 1421, p. 17.

Coral's assertion the Factoring Agreement was somehow terminated by the Court is unsupported by the record here.  Obtaining a court order declaring a complex Factoring Agreement to be terminated during the early days of a Chapter 11 case is unlikely in any

case.  Further, it is clear there has been no request for a court determination the Factoring Agreement was breached, terminated, or rejected, nor has the court made such a determination before now.

<u>*The Factoring Agreement Was Rejected by Operation of Law*</u>

Although Bankruptcy Code § 365 does not define the term "executory contract," generally "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other" is considered an executory contract."  *In re Wireless Data, Inc.*, 547 F.3d 484, 488 n.1 (2d Cir. 2008) (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)); *see also In re Penn Traffic Co.*, 524 F.3d 373, 379 (2d Cir. 2008). "The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed." *In re Weinstein Co. Holdings LLC*, 997 F.3d 497,504 (3d Cir. 2021).

Bankruptcy Code § 365(d)(1) sets a deadline by which a Chapter 7 Trustee may assume an executory contract, providing "if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief . . . then such contract or lease is deemed rejected.  11 U.S.C. § 365(d)(1).  Here, there is no dispute the Factoring Agreement was a pre-petition executory contract.  Because it was not assumed within 60 days after the conversion of the case to Chapter 7, it was rejected.  ECF No. 394; 11 U.S.C. § 365(d).

<u>*Rejection Is Not Termination*</u>

Although the Factoring Agreement was rejected and therefore breached, that is not the same as termination. *In re Masterwear Corp.*, 229 B.R. 301, 308 (Bankr. S.D.N.Y. 1999);[7] *Medical Malpractice Ins. Ass'n v. Hirsch (In re LaVigne)*, 114 F.3d 379, 386-87 (2d Cir. 1997); 11 U.S.C. § 365(g)(1); *see also In re Austin Dev. Co.*, 19 F.3d 1077, 1082-83 (5th Cir. 1994); *In re Continental Airlines*, 981 F.2d 1450, 1459-61 (5th Cir. 1993); *In re Modern Textile*, 900 F.2d 1184, 1191-92 (8th Cir. 1990); *In re Tri-Glied, Ltd.*, 179 B.R. 1014, 1017-18 (Bkrtcy. E.D.N.Y. 1995); 3 Collier on Bankruptcy P 365.10 (16th 2024) ("If rejection terminates the contract or lease, such termination may have consequences that affect parties other than the debtor and the other party to the contract or lease.").

"Rejection gives rise to a remedy for breach of contract in the non-debtor party. The claim is treated as a pre-petition claim, affording creditors their proper priority. Under sections 365(g) and 502(g), the date of breach is set as the date immediately prior to the debtor's filing for bankruptcy." *In re LaVigne*, 114 F.3d at 387; *see also In re Yasin*, 179 B.R. 43, 50 (Bankr. S.D.N.Y. 1995) (Because rejection constitutes a statutory breach, but does not repudiate or terminate the contract, the parties must resort to state law to determine their rights as a result of the breach.).

---

[7] Although, unlike in this case, the parties in *In re Masterwear Corp.* stipulated their factoring agreement was a financial accommodation contract, the court nevertheless reasoned "The Bankruptcy Code excepts ipso facto clauses in non-assumable financial accommodation agreements from the general prohibition against the enforcement of ipso facto clauses. 11 U.S.C. § 365(e)(2)(B). If a bankruptcy filing terminated all such agreements by operation of law, the exception would be superfluous. The financial accommodation agreement would terminate with or without an ipso facto clause. Thus, the debtors' contention that the Masterwear filing terminated the Factoring Agreement must also be rejected."

*Without a Termination of the Factoring Agreement, Liquidated Damages Do Not Apply*

On this record, the Court cannot conclude a termination of the Factoring Agreement occurred.  In the absence of a termination of the contract, the Court need not analyze whether, at the time the parties entered into the agreement, damages resulting from a future breach were ascertainable or whether the liquidated damage amount provided for by the Early Termination Fee was conspicuously disproportionate to the foreseeable losses.

<u>11 U.S.C. § 107(b) And the Record in This Case</u>

Pursuant to the 107 Order, certain documents remain subject to sealing or redaction.  However, the majority of the documents filed in these cases must be unsealed. As there are tens – if not hundreds – of thousands of pages of sealed material filed in these cases the court will set an August 15, 2025, deadline for Coral to file redacted versions of any documents subject to redaction pursuant to the 107 Order.

<u>Conclusion</u>

Pursuant to Fed.R.Civ.P. 54(b) and Fed.R.Bankr.P. 7054, and upon the parties' request, the Court concludes there is no just reason for further delay in entering judgment on the issue of Coral's entitlement to the Early Termination Fee.  For the absence of doubt, this Memorandum of Decision is limited to the issue of Coral Capital Solutions LLC's entitlement to the Early Termination Fee, based on the summary judgment record.

All arguments raised by the parties with respect to the issue of the Early Termination Fee have been considered by the Court and those which were not specifically addressed in this decision were found to be unpersuasive or inapplicable.

With the 11 U.S.C. § 107(b) issues in this case resolved, the court is now able to enter this Decision.  However, the court does not consider this to be a final order as it only adjudicates a portion of Coral's alleged claim in this case, and other components of Coral's claim, such as those relating to the Secured Term Note remain outstanding.  *See, Ritzen Group, Inc. v. Jackson Masonry, LLC*, 589 U.S. 35 (2020); *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015); Fed.R.Bankr.P. 8002.

Accordingly, it is hereby

**ORDERED**: Coral is not entitled to the Early Termination Fee under the Pre-Petition Factoring Agreement.  Accordingly, the pre-petition portion of Coral's Proof of Claim (Claim 79-3) will be reduced by $1,141,875.

Dated this 18th day of July, 2025, at New Haven, Connecticut.



Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut